OPINION OF THE COURT
Robert G. Hurlbutt, J.
In this CPLR article 78 proceeding, petitioner seeks to vacate the determination of the respondent Liverpool School District denying her application for retroactive membership in the New York State Teachers’ Retirement System pursuant to section 803 (b) (3) of the Retirement and Social Security Law. Petitioner was employed by respondent School District as a *43 part-time teaching assistant from September 1969 to June 1976. In 1969, her position was not eligible for participation in the New York State Teachers’ Retirement System (retirement system). Petitioner became eligible in February 1971, but did not begin to participate in the retirement system until October 1975.
In November 1994 petitioner sought retroactive membership in the retirement system pursuant to section 803 of the Retirement and Social Security Law, a statute enacted in 1993 which provides, in part, for retroactive membership in a public retirement system for individuals who "were eligible to join a public retirement system but did not because they were unaware of their rights.” (Executive Mem, McKinney’s Session Laws of NY, at 2896 [L 1993, ch 437].) The procedure for retroactive membership in the retirement system is set forth in section 803, which provides that the employer who employed a member at the time he or she was first eligible to join must "file[ ] with the retirement system an affidavit stating that the relief sought is appropriate because the member did not (i) expressly decline membership in a form filed with the employer; (ii) participate in a procedure explaining the option to join the system in which a form, booklet or other written material is read from, explained or distributed, such form, booklet or written material can be produced and documentation or a notation to the effect that he or she so participated exists; or (iii) participate in a procedure that a reasonable person would recognize as an explanation or request requiring a formal decision by him or her to join a public retirement system.” (Retirement and Social Security Law § 803 [b] [3].)
The statute further provides that "[a] member seeking to prove that he or she did not participate in a procedure described in clause (ii) or (iii) hereof must do so by substantial evidence” and "[a]n employer shall establish a review process which shall afford a member an opportunity to appear in person or in writing.” (Id.)
In response to petitioner’s request for retroactive membership, the respondent School District determined that petitioner did participate in a procedure that a reasonable person would recognize as an explanation or request requiring a formal decision by him or her to join the retirement system. The School District’s conclusion that petitioner was not eligible for retroactive membership under section 803 was conveyed to petitioner by affidavit of Peter J. Martuscello dated February 1, 1995.
*44 Petitioner requested review, which was held on April 7, 1995 at the Liverpool Central School District administrative office before F. Robert Kolch, Assistant to the Superintendent. Petitioner, who was represented by counsel, made oral statements and the District responded with statements by Mr. Martuscello. There is no indication that testimony was taken under oath, and there is no stenographic or other recording of the proceeding. The statute requires only that a review process be afforded and does not require the formality of a hearing.
Upon review of petitioner’s application, the Assistant to the Superintendent of the Liverpool Central School District, F. Robert Kolch, determined that petitioner was not entitled to retroactive participation in the retirement system. This determination, dated April 7, 1995, is challenged in this article 78 proceeding.
Petitioner contends that although teaching assistants became eligible to join the retirement system in 1971, she was not informed by her employer, the respondent School District, that participation was an option for her. She asserts, as she did in the review proceeding before the assistant to the superintendent, that prior to September 1975 she did not participate in a procedure explaining her right to join the retirement system and she did not participate in any process that a reasonable person would recognize as an explanation or request requiring a formal decision by her to join a public retirement system. She further asserts that she first became aware of her right to join the retirement system in the 1974-1975 school year when she received a copy of an employee handbook and she promptly enrolled in the retirement system.
In the review proceeding, the respondent stated that a formal personnel department was established by the District in 1968, that since that time it has been the practice of the District to advise and counsel every employee in employment-related options, including enrollment in a retirement system, and that membership information had been disseminated broadly and was readily accessible to similarly situated employees in 1971, as is confirmed by the fact that a number of similarly situated part-time teaching assistants joined the system at the time. The District was unable to produce copies of the materials allegedly broadly disseminated in 1972 as, due to the passage of time, those materials no longer exist. Likewise, no present employee of the District was able to offer testimony based upon direct knowledge of what occurred in 1970, 1971 or 1972.
The answer to the petition asserts that the decision under review was not arbitrary and capricious, and was rationally *45 based on evidence in the record. The answer also claims that section 803 violates the State and Federal Constitutions, citing article VIII, §§ 1 and 2 of the New York Constitution and the Due Process and Equal Protection Clauses of the United States Constitution. Notice óf these claims was given to the State Office of the Attorney-General, who responded raising issues involving the standing of the respondents to challenge the constitutionality of Retirement and Social Security Law § 803.
In the April 7, 1995 determination, Kolch declared that he was persuaded by the District’s showing that appropriate retirement system membership information was available to petitioner, as confirmed by the number of similarly situated employees who did join the system at that time. Kolch found that petitioner had not demonstrated by substantial evidence that retirement information had not been made available to her. He concluded that petitioner’s application for retroactive membership was properly denied.
The statutory requirement that petitioner prove that she did not participate in a procedure described in clause (ii) or (iii) of section 803 (b) (3) by substantial evidence has generated confusion, and the burden of proof thus imposed upon the petitioner was treated differently in the only two published cases found after exhaustive search. In Matter of Catalano v Western Suffolk BOCES (NYLJ, Feb. 16, 1996, at 34, col 3), Justice Oshrin, Supreme Court, Suffolk County, held that "the substantial evidence standard is a higher degree of proof than the preponderance of evidence standard.” The court concluded that the statute imposed upon petitioner a "heavy burden” to present "a quantum of proof such as to establish by more than a reasonable belief that she did not in fact participate in a procedure regarding enrollment.” Justice Oshrin cited 58 NY Jur 2d, Evidence and Witnesses, § 968, which comments, without citation, that the degree of proof imposed where the evidence must be "substantial” is one greater than a mere preponderance of the evidence.[1]
In Matter of Mogg v Brentwood Union Free School Dist. (NYLJ, Mar. 1, 1996, at 35, col 1 [Sup Ct, Nassau County]), Justice Gowan took quite a different view of the petitioner’s statutory burden of proof. Justice Cowan equated the "substan *46 tial evidence” burden of proof with the substantial evidence review undertaken by the courts in article 78 proceedings on certiorari to review. Thus, substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion or ultimate fact.’ ” Justice Gowan perceived the question as one of quality of evidence, not quantum of proof.
Although I do not quarrel with the determination in Matter of Mogg (supra) that the petitioner’s uncontroverted testimonial proof may alone constitute substantial evidence, I cannot accept that "substantial evidence” as a burden of proof can be defined by reference to "substantial evidence” as a standard of judicial review. "Substantial evidence is a standard of judicial review * * * which binds the courts when they examine quasi judicial determinations of an administrative agency.” (Matter of Aikins v Curtis, 81 AD2d 1020.) The standard is applied by the court when reviewing a record to determine that it contains evidence in support of the administrative determination such that an inference of the existence of the fact found can be reasonably drawn. (Matter of Furey v County of Suffolk, 105 AD2d 41; Schuck v State Div. of Human Rights, 102 AD2d 673.) In the context of judicial review of administrative decisions, substantial evidence is a means of measuring the rationality of a determination of fact, and is quite distinct from the burden of the applicant to prove the fact. In the instant case, substantial evidence is not the standard of review. The administrative determination at issue, made as it was as an exercise of discretion in the absence of a required trial-type hearing, is "within the domain of mandamus to review.” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7801:3, at 32; Matter of De Milio v Borghard, 55 NY2d 216.)
Burden of proof "denotes the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case.” (57 NY Jur 2d, Evidence and Witnesses, § 162.) It is the quantum of evidence that must be produced to establish prima facie any particular fact. "[I]t is a general principle in administrative law that the standard of proof in administrative hearings is a preponderance of the evidence.” (New Amber Auto Serv. v New York City Envtl. Control Bd., 163 Misc 2d 113, 119.) Variations on the preponderance standard are rare — -the most common being the burden of proof by clear and convincing evidence applicable in fraud cases. (Supra.) Cases upholding a standard of proof requiring that *47 facts be established, to a lesser degree than by a preponderance cannot be found. (See, Matter of Martin v Ambach, 111 AD2d 1009, supra, mod 67 NY2d 975 [where the Court held in an article 78 proceeding that "substantial evidence” was not an appropriate burden of proof].)
This court rejects both the conclusion that "substantial evidence” in the subject statute denotes a burden of proof less than the usual "preponderance” standard and that the statutory burden of proof can be measured by resort to the meaning of "substantial evidence” as a standard of judicial review. Substantial evidence is a term of art describing the quantum of proof necessary to overcome a presumption — to rebut the existence of a presumed fact or inference which is required by law to be drawn from a set of facts. (Richardson, Evidence § 58 [Prince 10th ed]; Thompson v Wallin, 301 NY 476, 494, affd sub nom. Adler v Board of Educ., 342 US 485; see, e.g., Wynn v Middleton, 184 AD2d 1019; Greater N. Y. Mut. Ins. Co. v Clark, 205 AD2d 857; Matter of Welch Foods v Village ofBrocton, 187 AD2d 948; Fili v Matson Motors, 183 AD2d 324.) In the case of Retirement and Social Security Law § 803 (b) (3), where substantial evidence is used to describe the petitioner’s burden of proof, the statute creates a presumption in favor of the employer based upon the affidavit asserting that the applicant participated in a procedure described in clause (ii) or (iii). It is the applicant’s burden to rebut the statutory presumption by "substantial evidence” to the contrary. (St. Andrassy v Mooney, 262 NY 368; Wynn v Middleton,- supra.) "[T]o 'presume’, in the sense of raising a presumption from the standpoint of the law of evidence, means to accept something as entitled to belief without other proof in the absence of proof to the contrary.” (57 NY Jur 2d, Evidence and Witnesses, § 98.) Although statutory presumptions are often created with the use of words such as "presumed”, "deemed” or "presumptive evidence”, the Court of Appeals makes it clear in the case of Matter of Casse v New York State Racing & Wagering Bd. (70 NY2d 589) that such words are not mandatory. In the cited case, the Court held that the "trainer responsibility rule” at 9 NYCRR 4043.4 in effect created a presumption to be rebutted by substantial evidence. That rule, which holds a horse trainer responsible for a positive drug test result "unless he can show by substantial evidence that neither he nor any employee or agent was responsible” (9 NYCRR 4043.4), makes no express mention of a presumption. The burden of substantial evidence implies that there is a presumption created.
*48 The record in the instant case reflects that the presumption created by the employer’s affidavit was met with petitioner’s direct assertion that she did not participate in the procedure presumed to have been afforded. Such evidence is sufficient to overcome the presumption, thereby creating an issue of fact, or credibility, for the fact finder. (Wynn v Middleton, 184 AD2d 1019, supra; Fili v Matson Motors, 183 AD2d 324, supra; Richardson, Evidence § 58 [Prince 10th ed].) Respondent came forward with proof to refute petitioner’s statements. The court’s review is limited to whether the administrative determination was arbitrary and capricious and without a rational basis. (Matter of Pell v Board of Educ., 34 NY2d 222, 230.) Arbitrary and capricious action is that which is taken without sound basis in reason and without regard to the facts. (Matter of Heintz v Brown, 80 NY2d 998; Matter of Board of Educ. v Sobol, 210 AD2d 675.)
The court’s role is limited; it may not disturb factual determinations (Matter of Heintz v Brown, supra, at 1000), nor weigh the evidence (Matter of Pell v Board of Educ., supra, 34 NY2d, at 230), nor substitute its judgment for that of the administrative official. (Matter of Pell v Board of Educ., supra, at 230, 231; Matter of Emminger v Education Dept., 215 AD2d 951; Matter of Freiburger v Sobol, 168 AD2d 817, 818; Matter of Diaz v Abate, 215 AD2d 275.) The court must review the record and if it cannot find that the agency acted "without consideration of or in disregard of the facts” or that the agency determination lacks a factual basis, then the petition must be dismissed. (Matter of Woodlawn Veterans Mut. Hous. Co. v New York State Div. of Hous. & Community Renewal, 159 Misc 2d 639, 645, affd 210 AD2d 149.)
Petitioner argues that the agency determination relies upon inference which is not supported by the facts, because the record contains no direct testimony or proof contradicting her assertion that she was not offered notice of her right to join the retirement system at any time prior to 1975. The law does not dictate that testimonial proof is or must be accorded more weight in the fact-finding process than circumstantial and/or inferential proof. (See, Fisch, New York Evidence, § 163, at 93 [2d ed 1977].) Circumstantial proof sufficient to support the inference to be drawn therefrom is often relied upon in criminal law (where the burden of proof exceeds that applicable in a civil case), and, in some cases, circumstantial proof is accepted as more reliable than testimonial proof. (People v Benzinger, 36 NY2d 29, 32; People v Gallo, 75 AD2d 148, 153; People v Leach, *49 57 AD2d 332, 336, affd 46 NY2d 821; 58 NY Jur 2d, Evidence and Witnesses, § 979.) "To establish a fact by circumstantial evidence * * * the circumstances must be such as fairly and reasonably lead to the conclusion sought to be established, and fairly and reasonably exclude any other hypothesis which can fairly and reasonably be deduced therefrom.” (58 NY Jur 2d, Evidence and Witnesses, § 979, at 737.)
It is not arbitrary and capricious for an agency to base its determination upon inference properly drawn from circumstantial proof, even where there is direct testimony to the contrary, especially where, as here, facts sought to be proved are events which occurred (or did not occur) 24 years ago. The District’s proof provided a sufficient factual basis for a reasonable inference that retirement system membership information had been made available to petitioner in the early 1970’s. The record includes the respondent’s letter to petitioner, dated February 1, 1995, by which the request for retroactive membership was initially denied. The letter states that respondents searched old files and records and determined that a number of full- and part-time employees of the District did opt to participate in the retirement system in the years between 1969 and 1973 (the early 70’s). The letter identified by name five teaching assistants employed by the District at the same time petitioner was so employed, and gave the dates on which their participation commenced. Although not stated expressly, the letter implied that the District concluded that, based upon the level of participation of employees similarly situated in the early 1970’s, information on entitlement to participate was made available to all persons in petitioner’s position.
At the review proceeding on April 7, 1995, Martuscello appeared for the School District and stated that he had searched old records of the District, that he determined that a formal personnel department was established in 1968, and that such department had established a uniform practice of advising all employees of benefits available, including the option to join a retirement system. He further asserted, based upon his examination of District records, that information had been disseminated broadly and was readily accessible to employees in petitioner’s job title in 1971, and that a number of similarly situated part-time teaching assistants joined the retirement system in 1971 or 1972. Martuscello also stated that at the time in question there was no statute or regulation requiring the District to provide written notice of retirement benefits or *50 to obtain written declination of benefits and that no documentation of that type existed.[2]
The court rejects petitioner’s argument that the District’s proof requires the inference that petitioner knew of her retirement options from the mere fact that others knew. The proof was not limited to a showing that others in petitioner’s position learned of their rights and exercised them, but included sufficient proof of the existence and uniform practice of a personnel department and the assertion that, based upon review of respondent’s records, retirement option information was "disseminated broadly” and "readily accessible”. The District’s proof, considered as a whole, could support a reasonable inference that the District provided information to petitioner regarding her retirement system option. Weighing the District’s proof against the petitioner’s direct testimony was the task of the administrative official and, as hereinbefore stated, this court cannot substitute its judgment for that of Mr. Kolch. (Matter of Pell v Board of Educ., 34 NY2d 222, supra.) The administrative determination was not arbitrary or capricious or without rational basis, and must be upheld.
It is not necessary or appropriate for the court to determine the constitutional issues raised by respondents because the petition is dismissed on other grounds. (Matter of Peters v New York City Hous. Auth., 307 NY 519; Matter of Beach v Stanley, 62 NY2d 241; Matter of Syquia v Board of Educ., 80 NY2d 531.)

. No support can be found in case law for the proposition that a burden to prove by substantial evidence is greater than a burden to prove by a preponderance of evidence. A case suggesting to the contrary is Matter of Martin v Ambach (111 AD2d 1009 [describing the substantial evidence burden as less exacting than the traditional preponderance standard]).

. 1 have not considered the affidavits submitted by the two individuals who were teacher’s assistants in the early 1970’s attesting that they received documentation from their employer regarding their retirement options in the fall of 1972. These submissions were gathered after the administrative determination under review was made, and they were not part of the record before Mr. Kolch.